AUSA: McGuinn

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Gray 2006 BMW X5<br>(VIN: 5UXFA13596LY42717; Plate # GIM8325) | )<br>)<br>)<br>)<br>)<br>)    Case No.    2:22-mj-799 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A-2

located in the    **Southern**    District of    **Ohio**    , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1) | Knowingly or intentionally manufacture, distribute, or dispense or possess with intent to manufacture, distribute, or dispense a controlled substance. |

The application is based on these facts:

SEE AFFIDAVIT ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Justin Myers, HSI, Special Agent
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Date:    12/19/2022

City and state:    Columbus, Ohio

_____
Kimberly A. Jolson
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE OF | |
| **1) THE PROPERTY LOCATED AT 4460 KEELER DRIVE, COLUMBUS, OHIO 43227, INCLUDING THE RESIDENTIAL DWELLING, CURTILAGE, AND DETACHED STRUCTURES** | Case No. _____ |
| **2) A GRAY 2006 BMW X5 BEARING OHIO PLATE: GIM8325 AND VIN: 5UXFA13596LY42717** | |

### Affidavit in Support of Application for Search Warrant

I, Homeland Security Investigations (HSI) Columbus, Ohio, Special Agent (SA) Justin Myers, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure in support of an application for a warrant to search the residence located at 4460 Keeler Drive, Columbus, Ohio 43227, which includes the residential dwelling, curtilage, and detached structures (hereafter referred to as TARGET RESIDENCE) and a gray 2006 BMW X5 bearing State of Ohio license plate: GIM8325 and VIN: 5UXFA13596LY42717 (hereafter referred to as TARGET VEHICLE), as described in Attachment A-1 and A-2, believing evidence, fruits, and instrumentalities of violations associated with 21 U.S.C. § 841(a)(1) - knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance are located within the TARGET LOCATIONS. I request authority to search the TARGET LOCATIONS in their entirety for evidence, fruits, and

1

instrumentalities of the above violation, and seize those items for further examination to be conducted on and/or offsite as described in Attachment B.

2. I have been employed by HSI since June of 2004. I gained experience through a bachelor's degree in Criminology, a master's degree in Forensic Science, completion of the Federal Criminal Investigator Training Program (CITP), and completion of the HSI Investigations Academy. During training at CITP and the HSI Academy, I was instructed in all phases of criminal investigation such as: Criminal Law, Search and Seizure, Field Enforcement Techniques, Firearms Proficiency, and Interviewing and Evidence. I completed the HSI Cyber Undercover Training Course and the HSI Advanced Cryptocurrency and Darknet Training Course. I am responsible for enforcing federal criminal statutes including, but not limited to, controlled substance violations, pursuant to 21 U.S.C. § 841.

3. I have personally participated in the investigation set forth below. The facts in this affidavit come from my personal observations, training, and experience, as well as review of documents and information obtained from other law enforcement personnel and witnesses. When I rely on statements made by others, such statements are set forth only in part and in sum and substance unless otherwise indicated. I believe the information to be true and reliable. Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant, it does not set forth all my knowledge about this matter. It sets forth only the facts that are believed to be necessary to establish probable cause. I did not withhold any information or evidence that would negate probable cause. The TARGET LOCATIONS are located within the Southern District of Ohio.

### Characteristics of Drug Traffickers

4. Based on my training and experience, I know that drug traffickers often use any means available to them to transport narcotics. One common method of smuggling drugs is to ship narcotics via the United States Mails. In addition, I know that drug traffickers commonly maintain books, records, receipts, notes, ledgers, electronic data, and other items relating to the importation,

2

transportation, ordering, purchase, and distribution of illegal drugs at their residence or at the location at which their trafficking activities are being conducted. I also know that drug traffickers use their vehicles to transport controlled substances.

5. I know that drug traffickers use drug proceeds to purchase houses, land, vehicles, precious metals, diamonds and other stones, jewelry, coins, financial instruments, and stocks and bonds. I also know that drug traffickers tend to keep a large amount of cash and drugs in safes or hidden within and their residence, vehicles, and remote storage sites, such as a storage rental facility.

6. In connection with the transportation of drugs, I know that drug traffickers frequently maintain evidence of travel and other records required to arrange for the purchase and importation and distribution of such drugs, and keep tickets, notes, receipts, passports and other documents at their residence or the location where they conduct trafficking activities, including on their mobile devices, computers, and related electronic storage media. I know that drug traffickers maintain records and other documents related to the possession, shipment, tracking and delivery of illegal controlled substances at the location where their drug trafficking activities occur. I know that indicia of occupancy, residency, and ownership of premises, including but not limited to utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, identification documents and keys are often maintained at such drug trafficking locations.

7. Further, I know that drug traffickers frequently know others involved in the trafficking of illegal substances, and address and/or telephone books, rolodex indicia, electronic organizers, telephone paging devices and the memory thereof, and papers, records or electronic data reflecting names, addresses, telephone numbers, pager numbers of co-conspirators, sources of drug supply and drug customers, and other items are frequently maintained by such traffickers which provide evidence of the identities of others involved in such trafficking.

8. I also know that drug traffickers frequently use aliases to conceal their identities, and often possess firearms and other weapons at the premises where they conduct drug trafficking to protect

3

themselves and their controlled substances. Persons who traffic in drugs often maintain at their residences and other locations where they conduct drug trafficking activities unsold or undistributed supplies of controlled substances and other drugs, drug paraphernalia including chemical diluents, weighing scales, mixing bowls, glassine bags, spoons, which are utilized in the weighing and packaging of controlled substances.

9. I know that drug traffickers receiving narcotics through parcels often keep evidence associated with ordering the narcotics saved to their internet, Darknet and cloud-based accounts. Darknet accounts are internet accounts generally accessed through a secure a TOR browser and unavailable through the open web. Cloud accounts are accounts used to store information on remote servers, which are accessed using personal computing devices. Drug traffickers often pay for the narcotics using electronic-based currency, referred to as cryptocurrency. Drug traffickers often store the cryptocurrency on internet-based cryptocurrency exchanges and/or on electronic wallets kept on their personal computing devices or cold storage cryptocurrency devices.

## Background of Investigation and Probable Cause for Search Warrant

10. On October 24, 2022, United States Customs and Border Protection (CBP) selected an international parcel (FedEx # 27909845570) for examination that was inbound into the United States from the country of China. The parcel was scheduled to be delivered to "Kwade" at the TARGET RESIDENCE. The contents of the parcel were manifested as "SCREW" with a declared value of $50.00.

11. Upon examination and a physical inventory of the contents of the parcel, CBP determined the contents to contain one pill press die set (upper and lower punch with receiving die). The die set contained markings consisting of a logo of square box with a letter "M" inside of the box and the number "30". CBP seized the contents pursuant to 19 U.S.C. § 1595a(c)(2)(A), 21 U.S.C. § 863(a)(3), and 21 U.S.C. § 863(d). The evidence was turned over to HSI.

12. State of Ohio databases identified Patricia Burke and Kah'Lil Kiree Lamonte WADE as current residents of the TARGET RESIDENCE. The seized parcel was scheduled to be delivered to "Kwade" at that residence, which is consistent with the name Kah'Lil Kiree Lamonte WADE. Investigators identified Patricia Burke as WADE's grandmother. The TARGET VEHICLE is registered to Patricia Burke at the TARGET RESIDENCE.

13. Department of Homeland Security databases list a past international parcel from China scheduled to be delivered to Ashley MCNEIL at the TARGET RESIDENCE. The parcel entered the United States on February 26, 2022. The parcel was manifested as a "PRESS MACHINE." CBP did not inspect the parcel. The parcel was not seized. CBP released the parcel to United States Mails for delivery to the scheduled recipient. I know that past international parcels seized by CBP manifested as "PRESS MACHINE" have either contained a full pill press or pill press parts. I also know that ordering a pill press or pill press parts and the subsequent pill press die set is consistent with somebody that is currently producing, or attempting to produce, pills.

14. State of Ohio databases list WADE and MCNEIL as residing together at previous addresses, along as at the TARGET RESIDENCE. Investigators determined MCNEIL to be WADE's former girlfriend. They no longer appear to reside together.

15. WADE is restricted from possessing a firearm due to his criminal convictions. State of Ohio and federal databases list WADE's criminal convictions from 2015-2022 as: theft (Felony 3), possession of a controlled substance (Misdemeanor 1), discharge firearm on/near prohibited premises (Felony 3), attempted burglary (Felony 3), possession of drugs (Misdemeanor 1), and criminal mischief (Misdemeanor 3). WADE currently has an active warrant for burglary. All criminal convictions and the active warrant are associated with the violations of the Ohio Revised Code (ORC).

16. The Drug Enforcement Administration's (DEA) Tactical Diversion Squad (TDS) in Columbus, Ohio identified the markings on the seized pill press die set as markings consistent

with a 30mg oxycodone pill made by the company Mallinckrodt Pharmaceuticals. The TDS stated the seized pill press die set appears to be counterfeit and that the markings placed on the die set are slightly different than a legitimate die set. The TDS also stated that WADE nor MCNEIL have reported the importation and operation of a pill press to the DEA as required under 21 U.S.C. § 1310.05.

17. On or about October 31, 2022, DEA SA Chris Caplin and DEA Task Force Officer (TFO) Andy Wuertz conducted surveillance at the TARGET RESIDENCE. At approximately 1538 hours, TFO spotted the TARGET VEHICLE departing the TARGET RESIDENCE. TFO Wuertz identified the driver of the vehicle as WADE.

18. On or about November 10, 2022, SA Caplin, TFO Wuertz, HSI SA Greg Libow, and I conducted surveillance at the TARGET RESIDENCE. The TARGET VEHICLE was parked in the driveway to the TARGET RESIDENCE. At approximately 1515 hours, the TARGET VEHICLE departed the TARGET RESIDENCE. TFO Wuertz identified the driver of the TARGET VEHICLE as WADE. Investigators attempted to follow the TARGET VEHICLE but were unable to do so. WADE was driving at a high rate of speed and violating other traffic laws by making turns where turns were prohibited. There was also heavy traffic in the vicinity of the TARGET RESIDENCE.

19. On December 02, 2022, WADE was arrested at the Hollywood Casino in Columbus on a state felony warrant for receiving stolen property in violation of ORC 2913.51(A). At the time arrest, WADE had a bag on his person containing approximately 46.3 grams of Marijuana (Schedule I controlled substance) and a bag containing 28 pills. The pills were rectangle in shape and green in color. Each pill contained the marking "S 90 3". That marking is associated with the drug Alprazolam (Xanax). The pills were sent to the Ohio Bureau of Criminal Investigation (BCI) Forensic Laboratory for analysis. The BCI Forensic Laboratory confirmed twenty three (23) pills contained 7.34 grams of 6-(4-chlorophenyl)-1-methyl-4H-[1,2,4]triazolo[4,3-a][1,4]benzodiazepine (4'-chloro Deschloroalprazolam) and five (5) pills contained Bromazolam.

6

Both substances under Ohio Administrative Code 4729:9-1-01(E)(5) are controlled as benzodiazepine pharmacophores, which are Schedule I depressants in the State of Ohio.

20. WADE used the TARGET VEHICLE to drive to Hollywood Casino. The vehicle was parked in the casino's parking garage. Investigators looked through the window of the vehicle and observed a few pills on one of the seats. The pills were rectangle in shape and green in color just like the pills found on WADE during his arrest.

21. On December 05, 2022, I obtained a warrant through the U.S. District Court in the Southern District of Ohio (case # 2:22-MJ-766) to place a Global Positioning Device in/on the TARGET VEHICLE. The warrant was attached to the TARGET VEHICLE on the same day. Electronic surveillance to date has shown the TARGET VEHICLE located at numerous motels/hotels and apartment complexes for short durations. That activity is consistent with the distribution of controlled substances.

22. Based on investigative efforts to date, I believe WADE resides at the TARGET RESIDENCE and is the primary driver of the TARGET VEHICLE. Investigators have never observed WADE drive any other vehicle. When arrested at the Hollywood Casino on December 02, 2022, WADE was in possession of a bag containing 46.3 grams of Marijuana (Schedule I controlled substance) and a bag of 28 pills containing benzodiazepine pharmacophores (Schedule I depressants in the State of Ohio). Like pills were seen on a seat in the TARGET VEHILCE. The pills found on WADE were not produced by a pharmaceutical company and consistent with pills pressed by an unlicensed individual. Based on my training and experience, I know that drug traffickers often use any means available to them to transport controlled substances. I also know that drug traffickers use their residence to store controlled substances and use their vehicle to transport controlled substances. I believe WADE is using his TARGET RESIDENCE to store controlled substances and his TARGET VEHILCE to transport controlled substances.

7

**Specifics of Search and Seizure of Computer Systems and Electronic Storage Devices**

23.  Searches and seizures of evidence from computers and mobile computing devices commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This is almost always true because of the following:

a.  Computer storage devices (like hard drives, CD's/DVD's, USB flash drives, flash memory, external hard drives, SD cards, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site; and

b.  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even experts in the forensic examination of computers and mobile computing devices to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since evidence on computers, mobile computing devices and electronic storage media is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

24.  In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit (CPU).  In cases involving controlled substances where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the

analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

25. In addition, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, and modem are all instrumentalities of the crime(s).

**Search Methodology to be Employed for Computer Systems and Electronic Storage Devices**

26. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

a. Examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

b. Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c. Surveying various files, directories and the individual files they contain;

d. Opening files to determine their contents;

e. Scanning storage areas;

f. Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B; and/or

g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

27. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.

When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## Conclusion

28. In the event that the Court grants this application authorizing a search warrant for the TARGET LOCATIONS, it is requested that the warrant and accompanying affidavit/application in support of the warrant be sealed until further order of the Court in order to avoid premature disclosure of the investigation. Except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on other law enforcement agents, including state and local law enforcement officers, to the extent necessary to effectuate the warrant.

29. Based on my training and experience and the facts as set forth in this affidavit, I believe there is probable cause to support that violations of 21 U.S.C. § 841(a)(1) were committed within the TARGET LOCATIONS. There is probable cause to search the TARGET LOCATIONS, which are located within the Southern District of Ohio and described in Attachment A-1 and A-2, for evidence, instrumentalities, contraband and/or fruits of 21 U.S.C. § 841(a)(1) and to seize those items described in Attachment B. I therefore respectfully request that the Court issue a

10

warrant authorizing the search of the TARGET LOCATIONS.

Justin Myers
Special Agent
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this 19<u>th</u> day of <u>December</u> 2022.

Kimberly A. Jolson
United States Magistrate Judge

11

## ATTACHMENT A-2

### DESCRIPTION OF LOCATION TO BE SEARCHED

A gray 2006 BMW X5 containing the VIN: 5UXFA13596LY42717 and plate number GIM8325.



2

**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEIZED**

**(4460 KEELER DRIVE, COLUMBUS, OHIO 43227, WHICH INCLUDES: THE**
**RESIDENTIAL DWELLING, CURTILAGE, DETACHED STRUCTURES AND A**
**GRAY 2006 BMW X5 CONTAINING THE VIN: 5UXFA13596LY42717 AND PLATE**
**NUMBER GIM8325)**

All fruits, evidence, and instrumentalities, as listed below of criminal offenses against the United States, that are associated with Title 21 U.S.C. § 841(a)(1) - knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance. The items and their associated contents to be searched for and seized include:

(a) Any and all logbooks, records, passwords, payment receipts, notes, and/or customer lists, ledgers and other papers relating to the transportation, ordering, purchasing, processing, storage and distribution of controlled substances, including all records of income and expenses;

(b) Any and all papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and other items relating to travel to obtain and distribute narcotics and narcotics proceeds. Evidence of such travel is often times maintained by narcotics traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls and records of long-distance telephone calls;

(c) Any and all books, records, invoices, receipts, records of real estate transactions, auto titles, financial statements, bank statements, cancelled checks, deposit tickets, passbooks, money drafts, withdrawal slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money. These

3

records should include both records of drug trafficking and legitimate business operations;

(d) Any and all computers, hard drives, thumb drives, SD cards, mobile/cellular phones, cryptocurrency storage devices and information and/or data, to be retrieved through forensic analysis, that is stored in the form of magnetic or electronic coding on computer media, on media capable of being read by a computer, or other recorded media. This includes, but it is not limited to, computer software, software manuals, tapes, CD's, diskettes, stored electronic communications, taped messages, electronic date/memo minders, address books, word processors, passwords, backup storage devices, audio tape and the contents therein, containing the related information generated by the aforementioned electronic equipment;

(e) Any and all United States currency, precious metals, diamonds and other stones, jewelry, coins, financial instruments, and stocks and bonds;

(f) Any and all photographs of co-conspirators, assets and/or narcotics, including still photos, negatives, videotapes, films, slides, undeveloped film and the contents therein;

(g) Any and all address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, and fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

(h) Any and all records associated with the use of cryptocurrency, to include, but not limited to, account records, passwords, recovery seed phrases and electronic wallets/addresses and the seizure of any stored cryptocurrency contained therein;

(i) Any and all indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including, but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, and vehicle

4

registrations and titles;

(j)  The opening, search and removal, if necessary, of any and all safes or locked receptacles or compartments;

(k)  Any and all open and unopened U.S. Mail packages/parcels and other packages/ parcels, to be opened if necessary;

(l)  Any and all firearms and ammunition, including but not limited to, handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons that are suspected of being used to protect controlled substances and any record or receipt pertaining to firearms, ammunition and other weapons;

(m)  Any and all controlled substances, drug paraphernalia, and associated items;

(n)  Any and all information/documents and items associated with the receipt of stolen property in violation of Ohio Revised Code 2913.51(A) and other related violations, including, but not limited to, contacts, applications, photographs, messages, emails, call logs, passwords, documents, calendar events, notes, financial documents and other documents, GPS/cellular locations, U.S. currency, credit cards, checks, consumer goods, and any other information/items;

(o)  Any and all other items which constitute evidence of the crimes of 21 U.S.C. § 841(a)(1).